```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,


V.                                        CRIMINAL ACTION
                                          NO. 19-20246
RICKY HANDSCHUMACHER,

                    Defendant.

_____/

                         SENTENCE HEARING
              BEFORE THE HONORABLE DENISE PAGE HOOD
                    United States District Judge
                    231 Lafayette Boulevard West
                         Detroit, Michigan
                    Tuesday, November 9, 2021
APPEARANCES:
TIMOTHY WYSE, MICHAEL EL-ZEIN
U.S. Attorney's Office
211 W. Fort Street-Suite 2001
Detroit, MI 48226
313-226-9770
Email: timothy.wyse@usdoj.gov, michael.el-zein@usdoj.gov
          On behalf of Plaintiff.

D. KEITH HAMMOND
D. Keith Hammond, P.A.
8624 Government Drive-Suite 101
New Port Richey, FL 34654
727-847-3121
Email: hammondeservice@tampabay.rr.com
          On behalf of Defendant.

ALSO PRESENT:  Bill Hampstead, Probation Officer

                         - - -
                    Andrea E. Wabeke
     Certified Realtime Reporter•Federal Official Court Reporter
          Email:  federalcourttranscripts@gmail.com
```

**I N D E X**

| Proceeding | Page |
|---|---|
| Allocution by Mr. Hammond.................. | 3 |
| Allocution by Ms. Ferrer................... | 20 |
| Allocution by Ms. Upchurch................ | 22 |
| Allocution by Mr. Wyse.................... | 23 |
| Allocution by Mr. S.S..................... | 34 |
| Sentence of the Court..................... | 35 |

**E X H I B I T S**

| Exhibit No. | Offered | Received |
|---|---|---|
| | (None Offered) | |

Sentence hrg.                                    11/9/2021

1                    Detroit, Michigan

2                    November 9, 2021

3                    2:17 p.m.

4                         -   -   -   -

5          **CASE MANAGER:**  The United States District Court for

6    the Eastern District of Michigan is now in session, the

7    Honorable Denise Page Hood, Chief Judge, presiding.

8          Now calling case number 19-20246, United States of

9    America versus Ricky Handschumacher.

10         Appearances, please.

11         **MR. WYSE:**  Good afternoon, your Honor.  Timothy Wyse

12   for the United States, and with me is Michael El-Zein.

13         **THE COURT:**  Is what?

14         **MR. WYSE:**  Michael El-Zein.

15         **MR. HAMMOND:**  And Attorney Keith Hammond on behalf of

16   Ricky Handschumacher here.

17         **THE COURT:**  Okay.  Good afternoon to all of you, and

18   you may be seated.

19         The record should reflect that we're here for a

20   sentencing on Mr. Handschumacher for Count 1, conspiracy to

21   commit wire fraud, and I have a presentence report dated

22   January 27, 2020.  Is that what you have?

23         **MR. HAMMOND:**  Yes, your Honor.

24         **THE COURT:**  And this charges a violation of 18 United

25   States Code Section 1349 and 134 with not more than 20 years in

Sentence hrg.                                    11/9/2021

1    prison, $250,000 fine.  It's a class C felony, and I have

2    report that lists the guidelines as a criminal history category

3    I, a total offense level 28, making the guideline provisions

4    for custody, which are advisory, of 78 months to 97 months, one

5    to three years supervised release, a fine range of $25,000 to

6    $250,000, and restitution of $7,681,520.03, and a special

7    assessment of $100.

8              Is that correct?

9          **MR. HAMMOND:**  Yes, your Honor.

10         **MR. WYSE:**  Yes, your Honor.

11         **THE COURT:**  Okay.  And I have that that's what you

12   all calculated relative to the plea agreement; is that correct?

13         **MR. WYSE:**  That is correct, your Honor.

14         **THE COURT:**  Okay.  So if I didn't accept this plea of

15   guilty, I do now, and the Rule 11 Agreement.

16             Is that still what your client wants to do?

17         **MR. HAMMOND:**  Yes, your Honor.

18         **THE COURT:**  Okay.  And I received a sentencing

19   memorandum, and I -- actually, this victim impact statement,

20   which is attached to it probably doesn't go with it, right,

21   from the Defendant, and it is ECF number 117; is that correct?

22   And it has some letters attached to it from an Amanda Upchurch,

23   David Ketchum, and Deborah Ferrer-Handschumacher, and Jonathan

24   Simkins; is that correct?

25         **MR. HAMMOND:**  Yes, your Honor.

USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                        11/9/2021

1          **THE COURT:**  I also received a victim impact

2   statement.  I think I have a Government sentencing memorandum

3   as well, I should note that next, and it is ECF 116, and it

4   asks for 88 months, and three years supervised release, and I

5   think, counsel, you're asking for a noncustodial sentence; is

6   that right?

7          **MR. HAMMOND:**  I didn't understand the question.

8          **THE COURT:**  For the Defense, is that what you're

9   asking?

10         **MR. HAMMOND:**  Just for a variance.  I'm not sure I

11  understood your question.

12         **THE COURT:**  Are you asking for a noncustodial

13  sentence?

14         **MR. HAMMOND:**  Yes.

15         **THE COURT:**  Okay.  And then I mentioned I had a

16  victim impact statement, and it's my understanding you -- what

17  are the initials of the victim?

18         **MR. WYSE:**  S.S., your Honor.

19         **THE COURT:**  Okay.  And it's my understanding that

20  individual called the Government today and asked if they could

21  listen in on the telephone, and that the Court just, right

22  before this hearing, was informed of that, and so we haven't

23  taken up any mechanism to make that easier or not.  However,

24  this is the same victim from which I received this victim

25  impact statement; is that correct?

          USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1          **MR. WYSE:**  That is, your Honor.

2          **THE COURT:**  Okay.  And it's this one that has the

3    name and the date of birth deleted and it's on a victim impact

4    form; is that correct?

5          **MR. WYSE:**  Yes, your Honor.

6          **THE COURT:**  Okay.  And so they have had a chance to

7    direct the victim impact statement to me.  We did attempt to

8    telephone the person so that they could listen in.

9          Are you attempting to do that again, Miss Saulsberry?

10         **CASE MANAGER:**  The clerk told me he just tried

11   calling the Court right now.

12         **THE COURT:**  So I'll finish making a record and then

13   we'll speak to that.  I indicated that we would try to contact

14   him.  He was contacted.  He didn't answer.  A message was left,

15   and, apparently, he's called back.  Did you also contact him by

16   e-mail, counsel?

17         **MR. WYSE:**  I directed our victim witness coordinator

18   to do so because I don't personally have it, but I did ask that

19   to occur.

20         **THE COURT:**  I didn't hear the last part.

21         **MR. WYSE:**  I'm sorry.  I asked our witness

22   coordinator to do that.  I personally don't have his e-mail,

23   but I let someone know who did to contact him.

24         **CASE MANAGER:**  I have him on the line.  He's on hold.

25   Should I patch him in?

                    USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

 1          **THE COURT:**  What are his initials?

 2          **MR. WYSE:**  S.S., your Honor.

 3          **THE COURT:**  S.S.  Okay.  Can you let him know before

 4  you patch him that we'll be referring to him as Mr. S.S.?

 5          Ms. Saulsberry, what have you done with my pad -- is

 6  he still on the line so I can pick it up from here?

 7          Mr. S.S., can you hear me?

 8          **MR. S.S.:**  Yes, I can.

 9          **THE COURT:**  Okay.  So you should know that I've

10  already started because we didn't get any answer from you

11  initially.  The attorneys have put their appearances on the

12  record and the appearance of the Defendant and the appearance

13  of somebody at the Government table, and there are some

14  spectators.

15          My name is Denise Page Hood, and I'm the judge

16  assigned to it.  A representative of the probation department

17  is with us as well, my case manager, and a court reporter, and,

18  of course, our court security officer.

19          You should know that you are not permitted to

20  transcribe this in any way, do you understand that?

21          **MR. S.S.:**  Yes, your Honor.

22          **THE COURT:**  And do you agree to that?

23          **MR. S.S.:**  Yes, your Honor.

24          **THE COURT:**  And I also have a victim impact statement

25  from you; is that correct?

Sentence hrg.                                      11/9/2021

1            **MR. S.S.:**  Yes, your Honor.

2            **THE COURT:**  Okay.  All right.  Very well then.  We're

3    going to proceed.

4            I have gone over the guideline range for custody from

5    the presentence report with them already, which is -- what did

6    I say it was, 78 to 97 months?  Let me go back there and find

7    it.  Maybe I won't find it.  Ah, here it is.  Which range is 78

8    to 97 months of custody, advisory, and up to a $250,000 fine

9    and a restitution amount of $7,683,570 plus, and I accepted

10   this plea of guilty, and the way this will proceed -- and,

11   Mr. Handschumacher, you should understand that this is how I

12   normally proceed.  I let your counsel go first.  Then I let the

13   Government counsel speak, and then you can make a statement to

14   the Court, okay?

15           **THE DEFENDANT:**  Yes, your Honor.

16           **THE COURT:**  And I don't know, counsel, whether or not

17   Mr. S.S. wants to make a statement.  Do you know that?

18           **MR. WYSE:**  It was my understanding, as of earlier

19   today, that he was going to let that statement speak for him

20   that he submitted, but your Honor could ask him again, but that

21   was what my understanding was.

22           **THE COURT:**  Okay.  Did you hear what counsel said?

23           **MR. S.S.:**  No, your Honor.

24           **THE COURT:**  Okay.  So we didn't know that you were

25   going to want to participate by phone.  So we don't -- aren't

USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1    set up to do that today.  So I'll help you by saying he has

2    told me that you don't want to make a statement yourself; you

3    want your written statement to stand for itself.  Is that

4    correct?

5            **MR. S.S.:**  Yes, your Honor.  And you should have a

6    shorter statement, like two pages as well, rather than the one

7    that he submitted in 2020.  It should be a relatively brief

8    statement.

9            **THE COURT:**  I don't have that.  I only have this

10   statement.

11           **MR. WYSE:**  I did not hear him, your Honor.

12           **THE COURT:**  He says, "I should have a short statement

13   as well," in addition to this.  I have a statement that says at

14   the top, "Victim Impact Statement."  It's like a form and it

15   continues onto a second page that says, "Additional

16   Information."

17           **MR. S.S.:**  Okay.  Is it two pages?

18           **THE COURT:**  Yes -- well, it's one and a half.

19           **MR. S.S.:**  Okay.  Yes, because I think one was

20   submitted originally, your Honor, like February 2020, but, you

21   know, it was really long.  So I just submitted a shorter, to

22   the victim specialist, and you have the right one.  Thank you.

23           **THE COURT:**  Okay.  Thank you.  All right.  Great.

24           I should also indicate, if I didn't indicate, that I

25   had a sentencing memorandum from each side.

Sentence hrg.                                        11/9/2021

 1          **MR. WYSE:**  You did, your Honor.

 2          **MR. HAMMOND:**  Yes, you did.

 3          **THE COURT:**  And -- okay.  Then I'm ready to -- I find

 4   the presentence report is accurate.  There are no objections to

 5   it.  So I'm ready for you to proceed.

 6          Now, what I'd like to you do is you're going to have

 7   to go to the podium and speak really loudly, okay.

 8          **MR. HAMMOND:**  Okay.

 9          **THE COURT:**  Sorry about that.  I normally would let

10   you either be seated or stand, whatever you want, but I don't

11   know, Ms. Saulsberry, do you think that he'll be able to hear

12   better from your phone?

13          **CASE MANAGER:**  I don't think so, Judge.

14          **THE COURT:**  Then counsel, you'll have to speak really

15   loudly, okay.

16          **MR. HAMMOND:**  Okay.  I'll try.

17          Your Honor, I'm going to speak, and another USA

18   attorney will then speak, and then Mr. Handschumacher.  Is it

19   okay his mother and his other half to speak after

20   Mr. Handschumacher?  I listed them as sentencing witnesses.

21   It's just as far as the order.  Is that the appropriate time

22   for them to --

23          **THE COURT:**  No.  They should go as part of your

24   presentation.

25          You don't have any objection to that, do you, sir?

                  USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                        11/9/2021

1              **MR. WYSE:**  No, your Honor.

2              **MR. HAMMOND:**  Then I'll bring --

3              **THE COURT:**  No.  You speak first.  Then you can have

4    them speak, and then the Government will speak, and then your

5    client.

6              **MR. HAMMOND:**  Okay, your Honor.

7              On this one, I've been going over all of the

8    materials that you've mentioned, and I just want to say a

9    little bit about the history which goes into showing that the

10   character and type of person that Ricky Handschumacher is.  I

11   know that at least nine months prior to the indictment, the

12   federal indictment, he was already cooperating with the state

13   and federal authorities, and, at that time, they were under the

14   impression that he was what we call a small fish in this

15   operation, but it -- after nine months, then the federal

16   indictment came down, and Mr. Handschumacher continued

17   cooperating with the federal authorities.

18             He's trying to do everything he can now.  It did not

19   lead to any arrest outside of the community, and the Government

20   did an excellent job in their memorandum as far as describing

21   the community, to help get an idea what this was, and it was

22   just a loose-knit organization.  None of them had ever met each

23   other personally.  I don't think they knew their real names

24   just they would chat under names on the Internet.

25   Mr. Handschumacher had never met any of these people.  So he

                  USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1    continued to do the things that we would hope that he would do

2    by cooperating.

3            He was under state control for around the 9 to 12

4    months prior to the federal indictment, and, then, when the

5    federal indictment came down, then the state dropped their

6    charges, but he was under bond and under supervision, and, so

7    since then, he's been under federal supervision.  He's got the

8    ankle monitor.  So he's -- for three years, he's been doing to

9    the right thing, but it's not just three years.  In the

10   Government's memorandum and in the presentence report, it goes

11   back -- he's -- he has no prior criminal record.  He's seemed

12   to be leading an exemplary life, and the reason I say this is

13   because is he a bad apple or is this an aberration, and I think

14   this was aberration.  It is not indicative of the type of

15   person.

16           A lot of people would say, "I'm gonna get my life

17   straightened out.  I'm gonna, I'm gonna, I'm gonna," and then

18   they have to come before you and say they're going to do stuff,

19   but he's the type where he didn't sit around feeling sorry for

20   himself.  He knows he's got to face punishment on this, but he

21   immediately got himself back up.  He got a job.  He has a

22   family.  He has children.  So he led a good life before this,

23   and, yes, he did these things, and there's really no excuse for

24   it, for what he did, and I read the victim impact.  I know -- I

25   would be devastated if that happened to me.  So I understand --

Sentence hrg.                                    11/9/2021

1   and I've done a lot of these cases, and I understand how

2   devastating it is to the victims, and that's where it makes the

3   Court's job tough because you have balance.

4           Here, in Mr. Handschumacher's case, he made a

5   mistake.  He's trying to do right, and while he's been on

6   release, I know -- I've represented hundreds of clients, and

7   there's always some kind of hiccup.  You know, the battery is a

8   problem, or this, or some kind of excuse.  We haven't heard

9   anything.  There have been no complaints about

10  Mr. Handschumacher, either from the state or the federal

11  authorities.  He's been doing what he's supposed to be doing.

12  I know the one time I was in here, and one of the codefendants

13  is wanting to go on the Internet to play Fortnite or something,

14  and you were having to talk to him.  I was surprised at that.

15  I'm thinking, you know, he's facing something like this.  He

16  needs to be doing what he should be doing, and that's what

17  Mr. Handschumacher is.  He's not "I'm gonna."  He's leading the

18  kind of life that he should.

19          And that's why it's a question as whatever

20  punishment, is it a deterrence, and some people -- like for

21  punishing children, some have to be spanked and some have to be

22  told.  At this point, it's working with Mr. Handschumacher.

23  He's obedient.  He does what he's told.  There hasn't been

24  anything new, and that's why I'm urging the Court to consider

25  it.

Sentence hrg.                              11/9/2021

1          And the other thing, when I look back at it, it

2    bothers me that it seems like a guideline sentence would impose

3    a sentencing disparity in something like this, and it's my

4    opinion it seems like Mr. Handschumacher is a small fish.  He

5    didn't know anybody else, and it's sort of like a drug

6    conspiracy, but we have a group of people in the community that

7    are actually hacking into the cell phones and targeting people,

8    and then we have another person that goes and talks to an

9    Internet provider or a cell phone provider.  Mr. Handschumacher

10   is down here, and these -- the people that want to do the

11   actual work, they need to contact somebody with a cell phone

12   provider.

13          So Mr. Handschumacher knows a defendant who knows the

14   people.  So he's not the one that actually contacts the

15   provider.  He's not the one that actually goes into the phones

16   he's not the one that actually handles any money.  His conduct

17   is still just as illegal.  It's like a drug conspiracy.

18          **THE COURT:**  So you're saying his conduct is what?

19          **MR. HAMMOND:**  Pardon?

20          **THE COURT:**  Is less than the other codefendants?

21          **MR. HAMMOND:**  Well, his guidelines are higher than

22   the sentences coming down with the codefendants.  Now, there

23   was one codefendant that had like over ten charges, and I think

24   he got a ten-year sentence, but, in the Government's

25   memorandum, they talk about a two and three-year sentence for a

USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                        11/9/2021

1    couple of them, and so it -- this bothers me, because I know

2    Mr. Handschumacher has got one charge and he's cooperated.

3            Now, what I'm guessing is that his cooperation, and

4    what the Government says, it's not fruitful towards arresting

5    anybody else.  I think that's because he only knows the people

6    in this close-knit group.  If others -- and I don't know if

7    others have an achieved cooperation because they know outside

8    stuff, but he only knows the few people in his group, and he's

9    been cooperating with them.  He's made trips up here to

10   Michigan on his own where there's several court hearings.  He's

11   talked to the federal authorities down in Tampa.  He's -- from

12   day one, he's been trying to do what he can.  So he's given

13   everything he knows, and I think everything he knows is

14   comprised in this prosecution.

15           And so that says to me, if he knew other people

16   outside of it, he would be a bigger fish, but he -- he just

17   knows what these -- and, like I said, he didn't know the people

18   that wanted to do the actual money transfer and the hacking.

19   He didn't know the actual people with the cell phone providers.

20   He knows people, and they'll say, "Do you know anybody?"  And

21   he says, "I think Defendant C can help you out."  So he'll

22   shift it, and he would get paid, and that's -- that's -- that's

23   where he made a mistake.  You know, it's one thing, you know,

24   just helping people out, but he's getting money for this, and

25   then people, like you see in that impact statement, are

Sentence hrg.                                    11/9/2021

1   impacted, and that's probably their retirement I'm guessing.

2   It would be devastating.  I know if it was my mom I would be

3   devastated.

4          The conduct can't be excused, and that's why he's

5   charged, but then the question is what, what does the Court do

6   as far as punishment?  What is necessary to deter him?  And

7   when I look at his life up until this act, and then his life

8   after this act, it seems like if he was a child, he's the kind

9   that can be told, and he's obedient.  Yes, he did wrong, but

10  the question is, you know, how much punishment needs to be

11  there.

12         I did note on the victim impact letter, it sort of

13  looks like it's all toward Mr. Handschumacher, but if I'm

14  understanding it correctly, it's the community did it.  I don't

15  know who -- I don't know which person actually did it, but it

16  shouldn't be targeted towards Mr. Handschumacher himself.  It

17  should be targeted towards all of them.  They all caused the

18  loss to this victim.

19         One the other things I wanted to bring to the Court's

20  attention is that there was a lot of money taken.  All of the

21  money that Mr. Handschumacher received in the way of Bitcoins

22  or turning into a vehicle or whatever has been seized by the

23  Government, and Mr. Handschumacher has voluntarily agreed to

24  turn that over.  He thinks there's an extra $5,000 in there

25  somewhere that he just spent, but that's what the Government

Sentence hrg.                              11/9/2021

1   took.  What they took is small apples in comparison to what was

2   taken overall.  So if that's all he got, that's another example

3   of him being a small fish in this thing.

4        There's millions.  There was millions that was taken,

5   but -- and I'm going over what my client told me.  He says that

6   everything he got was converted either into Bitcoin or personal

7   property, and the Government figured it out, and they got it

8   all, other than he -- like I said, he thinks he spent about

9   $5,000.  That ratio would tend to show that he's a small fish.

10  So that gets back to is there a sentencing disparity?  If

11  people are getting two or three years, why are his sentencing

12  guidelines so high?

13       So I would submit that he's a worker-type person.  He

14  was working at a government job before this.  He now has a job

15  again.  He didn't sit around feeling sorry for himself, didn't

16  make excuses; he works.  And he's got a letter he wanted to

17  read to the Court.  He wanted to talk, but he's nervous.  So I

18  told him to write it down.  So sometimes he'll get nervous

19  talking to the Court, and it seemed to me, in there, that he's

20  had time to think, and sometimes with this, when people think

21  the question is what's really important in life.  They're

22  chasing this money.  Is that -- you can't take that to the

23  grave.  The important things in life, which I think he's

24  finally getting, and it took me a long time to understand that,

25  that family, and spending time with their loved ones.  Those

Sentence hrg.                                    11/9/2021

1   are the things that are important.

2          Those are the things that mean something, and he's

3   got the people sitting behind him.  He's got his mom and his

4   other half, and they have a child, and he's put all of that in

5   jeopardy, and it's finally -- you know, when you're -- you

6   know, the young people, that they think it won't happen to

7   them.  It does happen to them and they don't think that every

8   action they have has a consequence.  So it's not just affecting

9   him, it's affecting the people that are sitting behind him that

10  love him.  He's thinking about that, and sometimes it just

11  takes people awhile to get that, but I think the light bulb has

12  clicked, and I'm hoping when he talks to you that will come

13  through.

14          Of course he's hoping for a non-incarcerated

15  sentence.  If the Court did decide to impose some type of

16  incarceration, we were hoping that he would not have to report

17  in until after the holidays.  This would be his first holiday

18  with his newborn, and we're hoping, also, that the Court would

19  recommend maybe Coleman or someplace like this in Florida so

20  the family could have an easier time visiting him and visit him

21  more often.

22          Just a couple thoughts from going over the Government

23  memorandum.  I was noticing on Page 5, they said the different

24  members had different functions.  That confirms what I was

25  saying, that there wasn't one person doing everything.

USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1   Everybody did something different, and, if I'm understanding

2   correctly, Mr. Handschumacher's part was when -- and he

3   didn't -- he didn't go looking for it.  When they would call

4   him, instead of doing the right thing and saying "no," he would

5   say, "I know where you can get what you want, go talk to this

6   defendant," and then they would go and talk to that defendant,

7   and that defendant would do another criminal act, and then

8   money would come to Mr. Handschumacher.  So it was wrong.

9          The Government's memorandum notes there that

10  Mr. Handschumacher did agree to the forfeitures.  It notes that

11  Mr. Handschumacher has no criminal activity or no criminal

12  history, and then, it was either Page 10 or 11, it said that it

13  appeared that he -- that he appears to be contrite and

14  remorseful, and that -- that's one of the things that -- I

15  represent a lot of people, and some of them just don't seem to

16  have any remorse, and that's, you know, and then I worry, you

17  know, what does the future hold for them.  I mean are they

18  going to if out and do it again?

19          If, like in the Government's memo, he's contrite and

20  remorseful, I think that's the first step, the first step.  If

21  he's not contrite and remorseful, then any leniency is going to

22  be wasted.  If he is contrite and remorseful, I think that's

23  the first step and leniency by the Court would be warranted,

24  and I think a lesser sentence is all that is necessary to

25  achieve justice in this case.

USA v Handschumacher, Case No. 19-20246

Sentence hrg.                              11/9/2021

1          So that's all I had to say, Judge.  If I may bring

2    forward his mother, Debra Ferrer.

3          **THE COURT:**  Yes, you may.

4          **MR. HAMMOND:**  Pardon?

5          **THE COURT:**  She also has a letter; is that correct?

6          **MR. HAMMOND:**  Yes.

7          **THE COURT:**  She should come forward and you should

8    stand at the podium with her.

9          **MR. HAMMOND:**  Okay.

10         **THE COURT:**  Do you want her sworn, counsel?

11         **MR. HAMMOND:**  It's not necessary.

12         **MS. FARRAR:**  Hi, your Honor.  My name is --

13         **THE COURT:**  You have to speak into the mic and speak

14   really loudly.

15         **MS. FERRER:**  My name is Debra Ferrer-Handschumacher.

16   I want to apologize for what my son has done.  He has great

17   remorse.  We have done nothing for the last three years but

18   have remorse for what he has done.  He has children.  I have an

19   eight-year-old granddaughter who has 50/50 custody with the

20   mom, and the mom has mental health issues.  We have major

21   concerns for his daughter.  Mom has tried to commit suicide.

22   He is very, very involved with his daughter's life.  CPS has

23   been involved on mom's side multiple times.  He made a mistake,

24   your Honor, absolutely.  My son has never been in trouble

25   before.  He's never even had a speeding ticket.  He's known in

USA v Handschumacher, Case No. 19-20246

Sentence hrg.                           11/9/2021

1   the high school we grew up where we live.  We've lived there

2   for 23 years, 24 years now.  He grew up there, and he was a

3   high school baseball player in the papers all the time.  He's

4   always had a good job.  He's always had love for his family.

5   He was raised just by me.  His dad left when he was about a

6   year old with alcoholism and abandoned us, and I raised him by

7   myself, and I thought I did a pretty good job.  I am a nurse.

8   I actually worked for Pasquale Sheriff's Department in the

9   medical detention unit and took care of the inmates.  My son,

10  that's not his character, and I just beg of you for leniency,

11  please.

12          It's his first time ever being in trouble.  He's

13  never been in trouble before.  He's scared.  He cries, and I

14  know he did wrong, believe me.  We know did he wrong; we all

15  do, but he's always lived a normal life.  He -- we have no

16  answer to why this happened.  He did it, and he's sorry, and he

17  has remorse.  We all do, my whole family.  We're all sorry.  He

18  just had a brand new baby.  He wants to be able to be the dad

19  that he didn't have, and he wants to be able to go up and see

20  his children and do things with his children.

21          I just ask of you to take into consideration that

22  he's never been in trouble.  He's a good kid, and we apologize,

23  and I'm sorry.  Thank you.

24          **THE COURT:**  Okay.  Thank you.

25          **MR. HAMMOND:**  And then Amanda Upchurch, his

Sentence hrg.                                    11/9/2021

1  significant other.

2          **THE COURT:**  She also has a letter; is that right?

3          **MR. HAMMOND:**  Yes.

4          **THE COURT:**  Okay.  Very good.  She may step forward.

5          **MS. UPCHURCH:**  My name is Amanda Upchurch.  We just

6  had our son two and a half months ago.  Ricky is the sole

7  provider for our family.  I currently am not working.  He is

8  such an amazing dad.  He made a huge, huge, mistake that

9  affects a lot of day-to-day things, but we make it work, and he

10 is such a great man.  I'm sorry. -- I can't do this.

11         **MR. HAMMOND:**  You have a letter.  Do you want to

12 stand on the letter?

13         **MS. UPCHURCH:**  Yes, please.

14         **MR. HAMMOND:**  That's okay.

15         **MS. UPCHURCH:**  Yes, please.  Thank you.

16         **THE COURT:**  All right.  Thank you for coming.

17         **MR. HAMMOND:**  That's why I have letters, because I

18 never know when they can make it through.  So that's all I

19 would have until the Government speaks, and then

20 Mr. Handschumacher wanted to speak, your Honor.

21         **THE COURT:**  Okay.  Thank you.  Does the Government

22 wish to make a statement to the Court?

23         **MR. WYSE:**  I do, your Honor.

24         **THE COURT:**  Okay.  Come to the podium, please.  I

25 wouldn't normally make you come up there, but, otherwise,

                USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1    there's no chance of the person on the phone hearing.

2          **MR. WYSE:**  I understand, your Honor.  Your Honor, we

3    are asking for a midpoint guideline sentence in this case of 88

4    months.  A key reason for this recommendation is the magnitude

5    of the crimes.  Mr. Handschumacher was not a small fish.  He

6    was tied to over $7 million in losses at the time of the theft.

7    Your Honor, that's more than any defendant that you've seen so

8    far in this case, and it's more than any defendant that you

9    will see in this case.  It's the top.

10         And the broader conspiracy that he was a part of

11   totaled in the tens of millions of dollars, but as defense

12   counsel noted, this was a loose conspiracy.  The Government

13   felt that the best facts -- the best reading of the facts was

14   to only hold people responsible for their own portion of it,

15   and our reading was only to hold people responsible for the

16   dollars at the time of theft, and, again, for

17   Mr. Handschumacher, that was over $7 million.

18         And yes, your Honor, this was cryptocurrency.  The

19   cryptocurrency is earned.  It's saved.  It's spent.  Its value

20   isn't something we make up, it was set by the market, and it's

21   value the Defendant recognized.  We saw -- with

22   Mr. Handschumacher, your Honor, we saw more purchases, more use

23   of the illegal funds than we did with other defendants.

24         **THE COURT:**  Okay.  Tell me this.  Tell me a little

25   bit more clearly what his role was in this offense --

                USA v Handschumacher, Case No. 19-20246

1            **MR. WYSE:**  With his role, your Honor --

2            **THE COURT:**  -- relative to the other people that are

3    involved?

4            **MR. WYSE:**  It was comparable.  I have to say that

5    much of the conspiracy is still shrouded.  I don't know to the

6    line what everyone did, but I do -- the role that was described

7    by Defense counsel was at least part of Mr. Handschumacher's

8    role, and it was a significant one.  This crime, as we agreed

9    before and discussed before, it couldn't take place without the

10   takeover of the victims' phones.  That was the essential

11   element of the crime.  Without that takeover of the phones,

12   nothing else could happen.

13           And while he may have done other things, one thing

14   that we do know that Mr. Handschumacher did do was he

15   facilitated the takeover of those numbers by either directly or

16   indirectly contacting cell phone companies, facilitating, in

17   some cases, bribes in order for cell phone providers to turn

18   control of numbers over to hackers.  It was a very lengthy,

19   complex, difficult to execute conspiracy.  These funds were

20   split many different ways but Mr. Handschumacher's element was,

21   if anything, the essential part of it, and he got the proceeds.

22           We seized ATVs, multiple ones.  Defendant purchased

23   jet skis.  He purchased $75,000 pickup truck.  Over half a

24   million dollars in cryptocurrency was seized from him.  He was

25   a comparable part, an integral part of this conspiracy that

Sentence hrg.                                    11/9/2021

1    your Honor has seen.  His role may have been different, but it

2    could not have occurred without what Mr. Handschumacher did.

3              If may I continue?

4              And something about that value, I mean we agreed in

5    this case the Defendant's value was calculated at the time of

6    the theft, and that's a good thing for the Defendant's

7    guidelines in his perspective, because the value of what he's

8    taken has skyrocketed.  For example, Defendant's guidelines are

9    based on approximately $7 million in losses, but just taking

10   one of the victims into account, Victim S.S., his loss today

11   would be valued at over $12 million, and we are not asking for

12   any increased guidelines, but we would like the Court to

13   understand and consider that in evaluating where the sentence

14   is relative to the guidelines, that the victims in this case

15   have actually lost far more than the paper value based on the

16   values have gone up.

17             I mean, as I mentioned, these crimes were repetitive.

18   It was not a one-shot deal.  This was done again and again and

19   again, and it was personal crimes.  The impact on these victims

20   go beyond the financial.  Whether it was Mr. Handschumacher or

21   someone else, it involved looking through the e-mails and

22   digital files of their targets.  It wasn't a black box crime in

23   which only dollars were taken.

24             The victims feel personally violated, and focusing on

25   Victim S.S., who submitted the statement, your Honor, he lost

Sentence hrg.                          11/9/2021

1   cryptocurrency to the conspiracy was valued at nearly

2   $2 million in 2018.  It's worth over $12 million today if he

3   had kept and held those positions, and this was his life

4   savings.  He sold his home.  He had to leave his state to

5   reduce the cost of living for him and his family of four.  His

6   child now keeps his toys in a locked box and asks his dad if

7   the hackers are going to come back.  This victim lost his

8   passport numbers, his Social Security number, account log in.

9   The exposure of his personal information on the Internet has

10  led to threats, extortion and it hasn't stopped.  Just last

11  week someone used his personal information to apply for a

12  $75,000 loan.  This is just one of the Defendant's victims, and

13  this isn't a victim that lost the most money.  Another victim

14  lost over $5 million at the time of theft.

15          Now, I understand, and I am sympathetic to

16  Defendant's personal circumstances but I don't find them

17  mitigating.  I think that asking for a noncustodial sentence

18  here is unrealistic and reflects a lack of understanding of the

19  gravity here.  Again, this was not just an occurrence crime

20  where personal circumstances might mean more.  He did it again

21  and again and again.  It was not an aberration of his

22  character.  I'm not saying that was the sum total of his being

23  your Honor, but it was part of his character.  It was part of

24  his character for over a year worth of this conspiracy, and

25  Defendant points out that he has two children, one of those is

Sentence hrg.                                11/9/2021

1  borne very recently.  That's tragic, your Honor, but it's not

2  mitigating.  It's something that no other defendant can claim

3  that.  I don't think it should be taken into account.

4       I do acknowledge that he did agree to be interviewed

5  by us.  He does appear to be contrite and remorseful.  He

6  sought cooperation with both us and another U.S. Attorney's

7  office, but his attempt to cooperate went nowhere.  No value

8  was provided.  I don't know if that's because he simply didn't

9  have the information or if he didn't share all of this.  I

10 can't say for certain that we got all of the money, but I can

11 say this, that he tried, but he just -- it didn't come out, and

12 we gave him three points for acceptance of responsibility.  I

13 think that's not small.  He's entitled to that, but I don't

14 think he's entitled to a break beyond that.

15      I'd also like to discuss the significant difference

16 between Mr. Handschumacher and the defendants previously

17 sentenced.  Your Honor previously sentenced Defendant Reyad

18 Abbas to 24 months and Defendant Colton Jurisic, whose loss was

19 smaller, but not significantly smaller.  They were both in the

20 neighborhood of the seven million-dollar range.  You sentenced

21 Jurisic to 42 months.  Neither of these individuals had a prior

22 criminal record either, and both of them, I think, had some

23 compelling circumstances as well which your Honor considered,

24 most importantly, their youth.  Both Defendant Jurisic and

25 Abbas were 18 at the time of their crimes, and both of those

Sentence hrg.                                    11/9/2021

1    two became involved in the conspiracy when they were minors.

2            That's not the case here.  Defendant was 25 years old

3    at the time of these crimes.  Now, that's not old, your Honor,

4    but it's old enough.  I mean in the hacking world, the

5    Defendant was, in effect, the old man in the chat room.  He

6    knew better than these 17 and 18 year olds.  He had a steady

7    job.  He had a stable relationship.  He had a child.  He wasn't

8    somebody who was a social malcontent locked in a basement.  He

9    knew better, and he participated again and again to the tune of

10   $7 million in losses, which netted him significant luxuries in

11   life.

12           Compared to his codefendants, he was significantly

13   more mature, with much greater life experience, and I think the

14   Court should take that into account, especially considering

15   he's at the top of the culpability chart when it comes to

16   dollar amounts, and, therefore, I believe he should receive a

17   sentence within the guidelines or, at the very least,

18   comparable to what Mr. Jurisic received.

19           Finally, as I have in companion cases, I like to make

20   a plea for a significant sentence as a matter of general

21   deterrence.  Crimes like this are a drain on the American

22   economy.  They undermine a growing digital financial sector,

23   and for that digital financial sector to grow, consumers need

24   confidence that they're going to be protected, and they need

25   confidence that thieves will be punished, and this was a

Sentence hrg.                                11/9/2021

1  complicated, complex crime.  It was difficult to prosecute and

2  investigate.

3            Defense counsel mentioned the nine-months time lag

4  between the time that the Defendant was arrested on local

5  charges in Florida, and then we eventually charged him.  It

6  wasn't because he a small fish.  It was because it took the

7  Government a lot of time to figure out who Mr. Handschumacher

8  was and how much he was responsible for.  These are difficult

9  to investigate and prosecute these crimes, your Honor, and

10  those that are caught and brought to justice, they need to be

11  punished to affect the choices of those out there who believe

12  that there's a chance they won't be caught, and if they are

13  caught, they need to see there's going to be consequences.

14            We need to affect the choices that people similarly

15  situated to the Defendant, technically talented individuals

16  tempted by easy money, and, your Honor, that, and I rest on my

17  memo, and that's why we're requesting an 88-month sentence.

18            **THE COURT:**  Tell me, is his activity more egregious

19  than the other persons that I've sentenced beyond just the fact

20  that they're younger?

21            **MR. WYSE:**  I think that the dollar amounts, but, as

22  far as his personal behavior, I don't think -- I would not say

23  a difference.  I would say the dollar amounts matter, your

24  Honor.  Mr. Abbas, I believe, was in the $400,000 loss range.

25  Mr. Jurisic was in the same ballpark, a little under

                USA v Handschumacher, Case No. 19-20246

Sentence hrg.                              11/9/2021

1   $7 million.  I think, your Honor, it's difficult to sort of

2   assign ranks, other than dollars, but they were all part of the

3   same conspiracy, and Mr. Handschumacher had more times at the

4   wheel.  He had more loss than anyone else brought before you,

5   and he was older and more mature.

6          **THE COURT:**  Okay.  All right.  What is the total

7   amount of the forfeiture?

8          **MR. WYSE:**  I would let my co-counsel speak to that,

9   your Honor.

10         **THE COURT:**  Okay.  Counsel, have you seen the

11  forfeiture language that's going to go into the judgment?

12         **MR. HAMMOND:**  Yes, I thought we had a forfeiture

13  agreement.

14         **MR. EL-ZEIN:**  We do, your Honor.

15         **THE COURT:**  I just want to make sure you knew the

16  language that was going to go in.  I know there are a couple of

17  vehicles, and I don't know if there were dollar amounts on

18  them, and so can you tell me the total amount of forfeiture

19  money-wise?

20         **MR. EL-ZEIN:**  Yes, your Honor.  The current -- so the

21  forfeiture I do not have sort of today dollar amounts today for

22  those figures.  That will vary greatly on the actual

23  liquidation process for all the vehicles and also the

24  cryptocurrency.  I'm also not aware of, you know, current

25  storage fees for the vehicles, things like that.  So I can't

                USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

 1    tell you the final amount that will be obtained when all of

 2    this is liquidated.

 3              As to the Court's earlier question, whether Defense

 4    counsel has seen the forfeiture language for the judgment.  As

 5    the Court is aware, I usually send that out before the hearing.

 6    I apologize, I failed to do that today.  I've already notified

 7    the probation officer that I will send that out after today's

 8    hearing, and I will obviously include Defense counsel.  What I

 9    can tell you is that the Court has already entered the

10    stipulated preliminary order of forfeiture.  I can tell you

11    what items we are seeking to forfeit and would ask for

12    inclusion in the judgment and, here, that is 2017 Ford F-250

13    two ATVs my co-counsel discussed here.  That's the 2018 Polaris

14    Ranger and 2019 Polaris Highlifter, and then the cryptocurrency

15    that we're forfeiting from this Defendant --

16              **THE COURT:**  Do those have value amounts on them?

17              **MR. EL-ZEIN:**  On the vehicles, I'm not certain what

18    the current values are on those, your Honor.  I apologize.  I

19    don't have the figures in front of me.

20              There's also approximately 38 Bitcoin.  It's a rather

21    extensive decimal after that that's stated in the stipulated

22    preliminary order, which is ECF 82.  There's also approximately

23    900 Ethereum.

24              So those values have gone up considerably from the

25    time of seizure, which is the value stated in the preliminary

                  USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1   order of forfeiture.  So when we actually liquidate those, it

2   will be substantially more.  As for the market price for 38

3   Bitcoin today, I'm not certain.  It changes, you know, fairly

4   regularly.  I mean you really have to check the daily number.

5   I did not do that before walking into court today.

6           **THE COURT:**  I didn't hear the last part of that.

7           **MR. EL-ZEIN:**  I'm sorry, I did not do that before

8   walking into court today.  I did not check to see Bitcoin's

9   current price.  It fluctuates.

10          **THE COURT:**  Okay.  On Page 7 of the Rule 11 Plea

11  Agreement, it says he's going to forfeit his interest in 38

12  Bitcoin seized that was 282 to -- $282,000 on May 9th and then

13  900 Ethereum, which was approximately $404,000 on May 9th.

14          Do you expect that those figures are going to go

15  down?

16          **MR. EL-ZEIN:**  No, your Honor.  I expect those figures

17  are higher today.

18          **THE COURT:**  Okay.  And when will you determine what

19  that amount will be?

20          **MR. EL-ZEIN:**  That won't be determined until we have

21  the final order of forfeiture.  The stipulated order is final

22  as to the Defendant.  However, we need to publish after the

23  judgment is issued, and then it has to be liquidated by the

24  marshal's service.  At this time, your Honor, the marshal's

25  service is actually in the middle of negotiating a contract for

Sentence hrg.                                    11/9/2021

1   their cryptocurrency services -- their liquidation services.

2   So I really don't want to hazard a guess.  I can't tell you

3   exactly when that will happen, but, obviously, the Government

4   will work to get that liquidated as soon as possible, and then,

5   also, as the Court's aware, I cannot promise -- I do not have

6   the authority to say that those funds will then be applied to

7   restitution, but that's something that we're happy to seek.

8          **THE COURT:**  No, you don't have that authority --

9          **MR. EL-ZEIN:**  Exactly.

10          **THE COURT:**  -- but you have the authority to

11   recommend; is that correct?

12          **MR. EL-ZEIN:**  Yes, I can make a recommendation.  I

13   intend to, your Honor.

14          **THE COURT:**  All right.  Great.  Do you understand

15   that, counsel?

16          **MR. HAMMOND:**  Yes, your Honor.

17          **THE COURT:**  And, Mr. Handschumacher, that the

18   forfeiture does not automatically go to the restitution.  The

19   Government will make a recommendation that it does, but it

20   doesn't automatically happen.  That's my understanding at

21   least; is that correct?

22          **MR. EL-ZEIN:**  Yes, your Honor.

23          **THE COURT:**  And I understand there is also, in

24   addition to that, some vehicles, a Ford Platinum -- a Ford

25   F-250 Platinum, a Polaris Ranger all-terrain vehicle, Polaris

Sentence hrg.                                    11/9/2021

1  Highlifter all-terrain vehicle, and I thought there was one

2  other vehicle.

3          **MR. EL-ZEIN:**  I believe it's just the three vehicles,

4  your Honor.

5          **MR. HAMMOND:**  I did have a question.  Excuse me.  It

6  doesn't automatically go to restitution.  Do you think it will

7  eventually go to restitution?

8          **THE COURT:**  They'll recommend that it will go to

9  restitution, but they don't have the authority to direct it

10 directly there.

11         **MR. EL-ZEIN:**  That's correct.  They'll have to make

12 their request with DC, and it's, ultimately, up to them.

13         **THE COURT:**  Okay.  Now, Mr. S.S., I noted that you

14 have submitted a victim statement.  Is there anything you want

15 to say?

16         **MR. S.S.:**  No.  I'd like to say I couldn't hear

17 everything that the Government said, that I just want -- from

18 what I could hear, your Honor, I just want to thank the

19 Government.  It's hard to overstate how disruptive that this

20 has been.  You know, we're not -- I can't speak for other

21 victims but we were not wealthy people --

22         **THE COURT:**  Hold on.  Mr. S.S., the court reporter is

23 trying to take it down.  Just speak a little slower.  Start

24 with where you were talking about, "We're not wealthy people."

25 Speak very loudly, sir.

                USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                11/9/2021

1          **MR. S.S.:**  It was basically our entire life savings

2    that was stolen, and, you know, almost four years of living

3    with the aftermath of that.  So I just want to thank the

4    Government for pursuing this, and, you know, trying to keep me

5    on, letting me participate, and I'm looking forward to, you

6    know, restitution and that justice is served.  This is really a

7    despicable crime that was carried out on ordinary working

8    people.  That's what I wanted to say.  Thank you, your Honor.

9          **THE COURT:**  All right.  Thank you.  I have gone

10   through the presentence report and the sentencing memorandum

11   submitted by counsel and the victim's statement, and I've also

12   heard from your family members.

13          Do you want to make a statement to the Court?

14          **THE DEFENDANT:**  Oh, yes, your Honor.

15          **THE COURT:**  All right.  You may.

16          No, you come to the podium with him, counsel.

17          **MR. HAMMOND:**  Okay.

18          **THE DEFENDANT:**  I just want to say a couple things,

19   your Honor.

20          **THE COURT:**  Loudly into the mic.

21          **THE DEFENDANT:**  Okay.  I just want to say a couple

22   things, your Honor.  My part in all of this, I didn't know how

23   old my codefendants were or like anything like that, and I

24   didn't know how much was, like, being taken.  That doesn't make

25   it right or anything, but I just got a cut of whatever they

USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1  were taking.  They didn't -- there was other people they could

2  have went to besides me to get this done.  So it probably,

3  unfortunately, would have gotten done anyway.

4          At the time of forfeiture, I gave, you know, anything

5  I had back, the trucks.  I -- they weren't mine.  I had no

6  objections to any of that, and then I would say I was a smaller

7  fish, because, even when I believe it was Homeland Security

8  came and even talked to like my mother in their van outside,

9  they specifically told her that that was, like that I was a

10  smaller fish in this.

11          Your Honor, I would just like to apologize to

12  everyone I have affected with my involvement.  First, I want to

13  sincerely apologize to the victims in these unfortunate

14  circumstances that I've been a part of.  I know my involvement

15  in this could have caused them hardships and sorrow.  I'm

16  begging your Honor to have some leniency.  This has been going

17  on since July 2018.

18          Being on an ankle monitor, GPS, and a curfew has

19  taught me such a lesson.  Missing going out on little

20  activities with my family and children, not being able to do

21  simple things, like go swimming with my daughter, breaks my

22  heart.  My amazing fiancee -- just me and my amazing fiancee

23  just have had our baby boy not even three months ago.  I want

24  to be there for my son and make all the memories that I didn't

25  have with my father growing up.

USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1            I've never been in trouble in my life before or after

2    my involvement.  To say I've learned my lesson is an

3    understatement.  I've realized no amount of money or greed is

4    worth me not being able to see my family or spend time with

5    them.  The memories are priceless.  Please consider my good

6    faith in this sentencing.

7            **THE COURT:**  Okay.  Thank you.

8            **THE DEFENDANT:**  Thank you.

9            **THE COURT:**  You're -- you all can go back to the

10   table if you've completed your statement.

11           **THE COURT:**  I'm required to fashion a sentence that's

12   sufficient but not greater than necessary to achieve the goals

13   of sentencing, and, in doing that, I'm to consider a number of

14   factors that are set forth in 18 United States Code Section

15   3553, and you should know that I have heard your counsel's

16   argument relative to your cooperation, but it's my

17   understanding that the Government has provided no cooperation

18   document; is that correct?

19           **MR. WYSE:**  That is correct, your Honor.

20           **THE COURT:**  Okay.  And is really asking for the mid

21   point of the guidelines, and so the factors I'm supposed to

22   consider are these:  The nature and circumstances of the

23   offense and the history and characteristics of the Defendant,

24   and I'm satisfied that, while I don't think that -- well, I

25   think the age of the other individuals involved really didn't

                 USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1   have anything to do with you.  What it really has to do with is

2   whether or not you were a more mature person and maybe should

3   have had some other indication of this wrongdoing and made a

4   better judgment than someone who perhaps is still young and a

5   bit naive might be.  Like I know one of the people, I was

6   convinced that person was much more naive than other

7   individuals involved in this.  You, however, aren't one of

8   those.

9          I have here also that I think that the nature and

10  circumstances the offense are serious, because there's a lot of

11  money stolen, and it's stolen from individuals who, number one,

12  are unsuspecting, and, number two, some of them are like

13  Mr. S.S., who is here in court today, that this was not, you

14  know, some organization or anything.  It was an individual and

15  their personal money, their, as he describes it, his life

16  savings that were involved, and I think that makes it a little

17  bit different than stealing from a company that might have some

18  other means of recovering that than an individual.

19         I'm also satisfied that it seemed like kind of a

20  we're going to go out there and just do these things.  We're

21  just going to hack.  We don't have any sense of caring very

22  much, until it's over, about people who might be involved in

23  this and where the money might be coming from and where it

24  might go, and so, to some extent, on the part of everybody

25  involved, it seemed like it was kind of a relaxed look at what

Sentence hrg.                              11/9/2021

1   you were doing and just kind of like a greed thing.  I mean it

2   wasn't -- particularly in your case, it wasn't that you were

3   destitute or anything.  You had some education, and you had the

4   ability to have a job.  So it wasn't that you couldn't go out

5   and make money on your own, and that is kind of the nature of

6   these kind of things, but I think it's a very serious offense

7   in this particular scheme of things.  I'm also to look at the

8   history and characteristics of the Defendant, and, for that, I

9   would note that in the scheme of people who come into court,

10  you're on the young end of that.  You may not think you are,

11  but you really are on the young end of those people who commit

12  crimes within our system.

13          I'm satisfied that you had a decent childhood.  I had

14  some notes here that you were and athlete and well-integrated

15  into your experiences as a youth, and, also, that, unlike some

16  other people, you did not seem to be someone who was just, you

17  know, isolating themselves and unliked by others and,

18  therefore, kind of a person who might reach out to do something

19  like this because of a bad situation that they were in.  Not

20  that that excuses that behavior, which is exactly what I told

21  them, that it doesn't excuse that behavior.

22          I'm also satisfied that -- I don't know whether it's

23  better or worse that there are hackers out there that don't

24  know one another, and maybe that adds a little bit to the

25  frivolousness and the unaccountability of it relative to one

USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1   another.

2         Otherwise, I don't think there's anything in your

3   history or characteristics that is a negative to you.  I had

4   one thing I wanted to note here.  Okay, I wanted to note that

5   it does not appear that you have any physical problems or that

6   you have any mental health diagnosis or received any mental

7   health treatment.  It does not appear that you have any

8   substance abuse problems.

9         It appears that you graduated from high school and

10  that you were able to have some employment, including an

11  employment from July of 2019, on Paragraph 44, until -- at

12  least at the time that this report was written, and that prior

13  to that, that you have worked -- you had been unemployed for a

14  time but that you were also employed by the city of Port

15  Richey, and, prior to that, in a grocery store, and for the

16  short period of time that you've been an adult, that's a

17  significant amount, as far as I'm concerned, of employment.

18        The other thing I want to say is that I'm to consider

19  whether or not the sentence that I'm going to craft will

20  reflect the seriousness of the offense.  I've already spoken to

21  that.

22        Promotes respect for the law and provides just

23  punishment, and I'm sure that you're aware now of the

24  seriousness of the offense.  That may be enough to promote

25  respect for the law.  I don't know that.  You know, I don't

Sentence hrg.                                    11/9/2021

1   know that in these particular kind of instances whether people

2   look at it and say, you know, I've been involved in this.  It

3   was easy.  I just happened to get caught.  I'm never going to

4   get caught again because of the nature of how this is done and

5   how hard it is to investigate and to find out what each person

6   involved in it is doing.  So I don't know that my sentence will

7   promote respect for the law, but at least I have taken it into

8   consideration.

9          And I'm also to fashion a sentence that provides just

10  punishment, and I know that in all of the cases during the

11  pandemic, where people have been on bond, they have noted I've

12  been, you know, really good, in quotes, on pretrial release,

13  and that shows that I am rehabilitated, and, to some extent,

14  that may be true.  To the other extent, the opportunity was

15  that you would not be on pretrial release and you would be in

16  custody where everyone else is attempting to get out of custody

17  because of Covid-19.  So I see that people would be, to a very

18  great extent, well-behaved on pretrial release at this time,

19  especially when they don't want to be incarcerated.  So I don't

20  give that a lot of weight.  I know it's a long time to wait,

21  but I'm sure it is far less onerous conditions than if you were

22  waiting in jail to be able to proceed.

23          I'm also to consider whether or not I will afford

24  adequate deterrence to criminal conduct, and I recognize that

25  this may have been an opportunistic crime, but it's still

Sentence hrg.                                    11/9/2021

1   illegal.  You still have to answer for it, and some of it, the

2   deterrence, I think, is not only deterring yourself, meaning

3   that something happens to you that makes you not want to do

4   this ever again even if you think the opportunity to be caught

5   is very small, and it's going to become less small.  The

6   Government is going to get better at uncovering this type of

7   crime and uncovering it earlier, but I also think that we deter

8   others by letting them know that we're not going to just let

9   this kind of crime go unaddressed.

10          I'm also to fashion a sentence that protects the

11  public from the further crimes of the Defendant, and I will do

12  that in this case by requiring, since it's your first contact

13  with law enforcement, and to some extent the presentence report

14  indicates it's a deviation from your otherwise law-abiding

15  life, that you will have to participate in the Computer

16  Internet Monitoring Program for the entire time that you're

17  connected to the Court by being incarcerated, if you're put in

18  a halfway house, or while you're on supervised release, and

19  you'll have to abide by that agreement, which addresses all of

20  the computers to which you would have any contact, okay, and it

21  allows them to not only search but at reasonable times and

22  places, but to also be for you to provide other people using

23  the computers with the understanding if you're using their

24  computer, it's subject to search as well.

25          I'm to fashion a sentence that provides you with

USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                          11/9/2021

1   needed education and vocational training, medical care, or

2   other correctional treatment in the most effective manner, and

3   it does not appear that you're unhealthy, or, as I said, have

4   any mental health or substance abuse concerns.  I know you have

5   a high school diploma, and you have had some employment that's

6   consistent with that, and so I would note that you should have

7   the opportunity to engage in any programs that you think are

8   beneficial to you to enhance that, but I don't have any that

9   I'm going to particularly point out.

10          I also have to consider the kinds of sentences

11  available, and that is the 78 to 97 months of incarceration,

12  and that it will be followed by a term of supervised release,

13  and I'm also to consider the need to avoid unwarranted

14  sentencing disparities among defendants with similar records

15  having been found guilty of similar kinds of conduct, and I

16  have these other codefendants, all of whom seem to have various

17  roles in conducting this conspiracy, and I think that my

18  sentence will reflect how I think the various roles and the

19  history and characteristics and other factors have impacted

20  those people, all of whom, so far, have received a sentence

21  that is below the guideline range.

22          I'm also to consider the need to provide restitution

23  to any victims of the offense, and I am going to order a

24  restitution against you relative to this.  I will also

25  recommend that the amount that you're forfeiting go against the

Sentence hrg.                                          11/9/2021

 1   restitution, but, you know, part of it is that, you know, the

 2   amount of restitution is really high, and I think it's really

 3   difficult for anybody, although you're a young person and so

 4   are the others, to pay back seven-and-a-half-million dollars.

 5   That's a tremendous amount of money, and the amount that it is

 6   apparent that you're forfeiting doesn't really approach that.

 7   It doesn't approach $7 million, and so, you know, the Court is

 8   always wondering what happened to the money that was stolen

 9   away from people and whether or not people have spent it or

10   they hid it away, especially if there's nothing really

11   apparent.  There is, in some cases, something apparent to show

12   for it, but I have considered that as well.

13           I've said in the other sentences, because in the

14   other instances, people also ask for noncustodial sentences,

15   that I don't think that a noncustodial sentence is appropriate

16   in these cases.  I mean we think, kind of like we do in other

17   kinds of cyber crimes, that you don't see what's happening.

18   It's not done with some -- it's not like you went in and robbed

19   a place where some people were standing there and you had to

20   deal with the actual people that you might be stealing the

21   money from, or had to confront an actual bank teller who might

22   be afraid or anything like this.  This is kind of done on your

23   own on the computer.  You don't really have any real people in

24   front of you.  It's not maybe very -- it does not seem very

25   personal to the people committing the crime, but it's really

Sentence hrg.                              11/9/2021

1   personal against the people that the crime is committed, and so

2   I don't think that a noncustodial sentence is appropriate.

3   Even with the halfway house and the like, I don't think it's

4   appropriate, and I think you can tell that from the other

5   sentences that I've imposed.

6           And, therefore -- but I should also say that I think

7   the 78 to 97 months is driven, as many as of these monetary

8   crimes are, by the amounts of loss, and I think, in this

9   particular instance, where I have people before me and you who

10  don't have prior serious offenses or any offenses at all, that

11  I give credit for that in most other instances of fashioning a

12  sentence, and the credit for it actually goes to the amount of

13  time that you have to be incarcerated usually, and I don't see

14  any reason why I shouldn't do that in this particular instance.

15  In all of these instances, I think I have before me people who

16  have the ability to do one of two things.  They can grow and

17  become productive members of society and attempt to pay back

18  the victims the money that was, you know, secretly stolen from

19  them and computers used to do that, and, therefore, I think

20  that a sentence within the guideline range is too much for the

21  charges that I'm presented with here for the reasons that I've

22  stated.

23          And, therefore, with respect to Count 1 of the

24  indictment, pursuant to the Sentencing Reform Act of 1984, the

25  Court, having considered the advisory guidelines and the

Sentence hrg.                                    11/9/2021

1   factors contained in 18 U.S.C. §3553(a), commits the Defendant

2   to the custody of the Bureau of Prisons for a term of 48

3   months.

4           And, upon release from imprisonment, the Defendant

5   will be placed on supervised release for a term of three years.

6           I'm ordering that a special assessment of $100 be due

7   immediately.

8           I'm also waiving the imposition of a fine, the costs

9   of incarceration, and the costs of supervision, which are

10  large, because of the lack of resources currently existing,

11  and, also, because of the amount of the restitution that I'm

12  going to order, and I'm ordering that you pay that restitution

13  to the clerk of the court for disbursement to the victims

14  identified below in the amounts below for a combined

15  restitution order of $7,681,570.03, which is due immediately.

16          While on supervised release, payments must be made at

17  a rate and schedule determined by the probation department,

18  approved by the Court, and they are going to these victims:

19          Victim with initials D.M. in the amount of

20  $116,387.12;

21          Mr. S.S. in the amount of $1,967,146.57;

22          And S.B. in the amount of 5 -- no, I'm sorry,

23  $5,598,036.34.

24          I am suspending the mandatory drug testing, unless

25  it's determined by the probation department, while you're on

                USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1    supervised release, that you're using drugs or alcohol.

2            Pursuant to 34 United States Code Section 40702, the

3    Defendant shall cooperate with the collection of a DNA sample.

4            While on supervision, you must abide by the standard

5    and special conditions adopted by the United States District

6    Court for the Eastern District of Michigan, most important of

7    which are that you not commit a crime against any other unit of

8    government, that you not have a firearm or any ammunition

9    either in your home, your car, your place of business, anyplace

10   where it could be attributable to you.  I'm also going to --

11   but all of them are listed on one page of your judgment, all

12   the conditions, and you should pay attention to them, because I

13   hold you accountable for reading all of them.

14           I, also, the following condition is imposed, and that

15   is that you must participate in the Computer Internet

16   Monitoring Program administered by the United States Probation

17   Department, and you must abide by the program participant

18   agreement in effect at the time of supervision and comply with

19   any amendments to the program during the term of supervision.

20   Due to the advances in technology, the Court will adopt the

21   amendments to the Computer Internet Monitoring Program as

22   necessary.

23           For the purposes of accounting for all computer

24   hardware, software and accessories, you must submit your

25   person, residence, computer, and/or vehicle to a search

                USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

1   conducted by the United States Probation Department at a

2   reasonable time and in a reasonable manner.  You must inform

3   any other residents of your premises who may be subject to the

4   search pursuant to this condition.

5        You must provide the probation officer with access to

6   requested financial information, including billing records,

7   telephone, cable, Internet, satellite, et cetera, and you must

8   submit your person, your residence, and your office, your

9   vehicle, papers, business, or place of employment, and any

10  property under your control to a search, and such search shall

11  be conducted by the United States probation officer, again, at

12  reasonable times and in a reasonable manner based upon a

13  reasonable suspicion of contraband or evidence of a violation

14  of a condition of release, and if you fail to do that, that may

15  be grounds for revocation of your supervised release for which

16  you may be sent back to incarceration.

17       Due to the restitution obligation, you will not be

18  permitted to open any lines of credit, get any loans, or

19  anything of the like without the approval of the probation

20  officer, and only if you're in compliance with your probation

21  order.

22       And you must pay your financial penalties in

23  accordance with the scheduled payments set by this judgment,

24  which are that the probation department will set them after

25  reviewing your financial data, and then the Court will approve

Sentence hrg.                              11/9/2021

1    it.  You should know that I am recommending no less than $100

2    per month for you to pay.

3              I think that's all.

4              Does probation department have anything else?

5              **PROBATION OFFICER:**  No, your Honor.

6              **THE COURT:**  Okay.  What about the Government?  Are

7    you wishing anything other than that the forfeiture language be

8    included?

9              **MR. WYSE:**  Nothing else, your Honor.

10             **THE COURT:**  Okay.  Do you want to make any

11   recommendations relative to incarceration?

12             **MR. HAMMOND:**  Just a recommendation as to him being

13   placed in Florida so that it will be closer for the family, and

14   I don't know -- I didn't know if he's allowed to stay out of

15   reporting at this time.  He was hoping to spend the holidays

16   with his family.

17             **THE COURT:**  You know, everybody hopes to do that,

18   counsel, and the holidays get started earlier and earlier every

19   year, and, you know, I say that, because some people really

20   deserve it, and some people really don't, but I am going to

21   require that he report -- what's the date that we're giving for

22   people to report in January?

23             **CASE MANAGER:**  I thought it was January 22nd.

24             **THE COURT:**  That's okay.  Who has -- does probation,

25   do you have your phone?

                USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                    11/9/2021

 1              Okay.  Andrea, can you pull up the calendar?

 2              What's the first day of -- the first business day --

 3    I've been using the second business day following January 1st.

 4         **COURT REPORTER:**  January 3rd.

 5         **THE COURT:**  January 3rd?

 6         **COURT REPORTER:**  Yes.

 7         **THE COURT:**  Okay.  You can report no earlier than

 8    January 3rd.

 9              I want to tell you a couple of things.  Don't try to

10    dispose of any of your income or any of the things that have

11    been forfeited during this period of time.  You must abide by

12    all the conditions of your pretrial release until you're asked

13    to report.

14              I'll recommend that you be placed somewhere, as the

15    BOP normally does try to place people somewhere near where they

16    live, wherever they live.  In this case, it will be Florida,

17    but you still have to continue whatever reporting you're doing

18    for now, all right, and I will consider it a violation of your

19    pretrial release if you try to dispose of any of your assets.

20    Do you understand that?

21         **THE DEFENDANT:**  Yes, your Honor.

22         **THE COURT:**  Do you have any questions about your

23    sentence?

24         **THE DEFENDANT:**  No, your Honor.

25         **THE COURT:**  Okay.  In your Rule 11 Plea Agreement,

                 USA v Handschumacher, Case No. 19-20246

Sentence hrg.                                11/9/2021

1   you gave the right up the right to take an appeal if I had

2   sentenced you at or below the guideline range, which I have,

3   except for ineffective assistance of counsel and prosecutorial

4   misconduct, but if you think that you -- if you and your

5   counsel thinks there's any other room for appeal, you have only

6   14 days to make up your mind to take an appeal, and if you

7   cannot afford the appeal, I will appoint an attorney for you at

8   no cost to you.  Do you understand all of that?

9           **THE DEFENDANT:**  Yes, your Honor.

10          **THE COURT:**  Okay.  Anybody have any questions?

11          **MR. WYSE:**  No, your Honor.

12          **THE COURT:**  Okay.  All right.  Very well.  This

13  matter is in recess.  The BOP will --

14          **MR. HAMMOND:**  Pardon me?

15          **THE COURT:**  The BOP will send you a letter, and it

16  will tell you where to report.  If it doesn't tell you what

17  time to report, you should report by noon of the day that they

18  designate, all right?

19          **THE DEFENDANT:**  Yes, your Honor.

20          **THE COURT:**  Okay.

21          **MR. HAMMOND:**  So for today --

22          **THE COURT:**  I'm sorry?

23          **MR. HAMMOND:**  For today, is there anything he needs

24  to do today?

25          **THE COURT:**  He needs to follow all the conditions of

Sentence hrg.                                    11/9/2021

1   his pretrial release until he's, you know, receives a letter

2   from them.

3            That's all he has to do, Mr. Hampstead; is that

4   right?

5            **PROBATION OFFICER:**  That's it.

6            **MR. HAMMOND:**  All right.  Thank you, your Honor.

7            **THE COURT:**  Thank you.  The Court is in recess.

8                 (Proceedings concluded 3:39 p.m.)

9                              - - -

10

11                  **C E R T I F I C A T I O N**

12            I, Andrea E. Wabeke, official court reporter for the

13   United States District Court, Eastern District of Michigan,

14   Southern Division, appointed pursuant to the provisions of

15   Title 28, United States Code, Section 753, do hereby certify

16   that the foregoing is a correct transcript of the proceedings

17   in the above-entitled cause on the date hereinbefore set forth.

18   I do further certify that the foregoing transcript has been

19   prepared by me or under my direction.

20   /s/Andrea E. Wabeke                      August 24, 2022

21   Official Court Reporter                  Date
     RMR, CRR, CSR
22                              - - -

23

24

25

              USA v Handschumacher, Case No. 19-20246